1  Nathan Dooley (SBN 224331)
   Email: ndooley@cozen.com
2  Elliott R. Feldman (Pro Hac Vice Pending)
   efeldman@cozen.com
3  William N. Clark, Jr. (Pro Hac Vice Pending)
   wclark@cozen.com
4  COZEN O'CONNOR
   601 S. Figueroa Street
5  Suite 3700
   Los Angeles, CA  90017
6  Telephone: 213.892.7900
   Toll Free Phone: 800.563.1027
7  Facsimile: 213.892.7999

8  Attorneys for Plaintiffs
   Homesite Insurance Company of the
9  Midwest, American Strategic Insurance
   Corporation, Milbank Insurance Company
10 and Meridian Security Insurance Company

11

12                UNITED STATES DISTRICT COURT

13           FOR THE CENTRAL DISTRICT OF CALIFORNIA

14

15 HOMESITE INSURANCE COMPANY          )  Case No.: 2:16-cv-06769
   OF THE MIDWEST, AMERICAN            )
16 STRATEGIC INSURANCE                 )  **CLASS ACTION COMPLAINT**
   CORPORATION, MILBANK                )  **FOR DAMAGES AND**
17 INSURANCE COMPANY AND               )  **INJUNCTIVE RELIEF**
   MERIDIAN SECURITY INSURANCE         )
18 COMPANY, on their own behalves and  )  **1. DECLARATORY RELIEF**
   on behalf of all other similarly situated )  **2. NEGLIGENCE**
19 insurance companies which underwrite )  **3. VIOLATION OF CLRA, CAL.**
   property insurance coverage in the United )     **CIV. CODE §§ 1750** *et seq.*
20 States,                             )  **4. VIOLATION OF CAL. BUS. &**
                                       )     **PROF. CODE §§ 17200** *et seq.*
21                Plaintiffs,          )  **5. STRICT PRODUCT LIABILITY**
                                       )
22        vs.                          )
                                       )  DEMAND FOR JURY TRIAL
23 GREE USA, INC., GREE ELECTRIC       )
   APPLIANCES, INC. OF ZHUHAI,         )
24 HONG KONG GREE ELECTRIC             )
   APPLIANCE SALES, LTD.,              )
25                Defendants.          )
                                       )
26                                     )
                                       )
27 _____)

28

                                 1
   CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, Homesite Insurance Company of the Midwest, American Strategic Insurance Corporation, Milbank Insurance Company and Meridian Security Insurance Company, individually and on behalf of all other similarly situated insurance companies which underwrite property insurance coverage in the United States, bring this action against Gree, USA, Inc., Gree Electric Appliances, Inc. of Zhuhai, Hong Kong Gree Electric Appliances Sales, Ltd.

## **THE PARTIES**

1.     Plaintiff, Homesite Insurance Company of the Midwest ("Homesite"), is an insurance company incorporated in the State of Connecticut with its principal place of business located at One Federal Street, Boston, Massachusetts, which, at all times material hereto, was authorized to and did regularly and systematically write property insurance in and about the United States.

2.     Plaintiff, American Strategic Insurance Corporation ("ASI"), is an insurance company incorporated in the State of Florida with its principal place of business located at 1 ASI Way N, St. Petersburg, Florida 33702, which, at all times material hereto, was authorized to and did regularly and systematically write property insurance in numerous states.

3.     Plaintiff, Meridian Security Insurance Company ("Meridian"), is an insurance company incorporated in the State of Indiana with its principal place of business located at 2955 North Meridian Street, Indianapolis, Indiana 46208, which, at all times material hereto, was authorized to and did regularly and systematically write property insurance in numerous states

4.     Plaintiff, Milbank Insurance Company ("Milbank"), is an insurance company incorporated in the State of Iowa with its principal place of business located at 1300 Woodland Avenue, West Des Moines Iowa, 50265, which, at all times material hereto, was authorized to and did regularly and systematically write property insurance in numerous states.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

5.     Defendant, Gree Electric Appliances, Inc. of Zhuhai ("Gree China") is a Chinese corporation with its principal place of business located at Jinji Road West, Qianshan Zhuhai Guang Dong, 51907 China.

6.     Defendant, Hong Kong Gree Electric Appliances Sales, Ltd. ("Gree Hong Kong"), is a Chinese corporation with its principal place of business located at Unit 2612 Miramar Tower, 132 Nathan Road, Tsin Sha Tsui Kowloon, Hong Kong.

7.     Defendant Gree USA, Inc. ("Gree USA") is a California corporation with its principal place of business located at 20035 East Walnut Drive, North, City of Industry, California.

## GENERAL PERSONAL JURISDICTION

8.     Gree USA is a California corporation with its principal place of business in California and, as such, this Court has general personal jurisdiction over Gree USA.

9.     Gree Hong Kong is and has been the majority owner of Gree USA since October of 2010 and, as such, this Court has general personal jurisdiction over Gree Hong Kong.

## SPECIFIC PERSONAL JURISDICTION

10.    This case arises out of the sale and distribution of two million, five hundred thousand (2,500,000) dehumidifiers that were designed and manufactured by Gree China and exported into the United States by Gree China's wholly owned subsidiary, Gree Hong Kong.

11.    Gree China is a Chinese corporation with sales of billions of dollars of products worldwide.

12.    Despite its substantial sales of products worldwide, Gree China had relatively small sales in the United States before 2010.

13.    As part of its plan to penetrate the US consumer market, Gree China needed a brand name that major US retailers were familiar and comfortable with, so that these retailers would purchase products manufactured by Gree China.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

14. MJC America, Ltd. ("MJC"), is a California corporation with its principal place of business located at 20035 East Walnut Drive North, City of Industry, California 91789.

15. Starting in 2008/2009, Gree China, for the purpose of increasing sales in the United States and for the purpose of associating itself with a brand familiar to US retailers, approached MJC in California about MJC selling and promoting Gree products to US retailers, including Home Depot, Sears, Lowe's and other similar retail chains.

16. As part of its plan, Gree China sent employees of Gree China to meet with MJC in California.

17. Starting in 2010, Gree China and MJC agreed to brand dehumidifiers under the name "SoleusAir powered by Gree" as a test case to determine if MJC's Soleus brand could assist Gree China in penetrating the US market.

18. From January of 2010 until October of 2010, Gree China exported at least 421,000 dehumidifiers bearing the "SoleusAir powered by Gree" brand to MJC in California for distribution to US retailers.

19. In September of 2010, Madam Dong, the President and CEO of Gree China and Gree Hong Kong, along with other employees of Gree China and Gree Hong Kong, traveled to California for the purposes of meeting with MJC's officers and to tour US retailers.

20. As a result of the September 2010 meeting in California, Gree China and Gree Hong Kong entered into a memorandum of understanding concerning the formation of a joint venture between Gree Hong Kong and MJC, whereby Gree Hong Kong would own 51% and MJC would own 49% of a company to be called Gree USA which would market, sell, and distribute products made by Gree China in the United States.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

21.    The understanding reached with Madam Dong, as President and CEO of Gree China, culminated in the founding of a California corporation called Gree USA, which was formed in California in October of 2010.

22.    In June of 2011, Madam Dong traveled to California for the purpose of publicly announcing Gree China's formation of Gree USA and, as part of this trip, Madam Dong, along with other employees of Gree China, met with government officials, including the Mayor of the City of Industry and members of the United States Congress.

23.    During the June 2011 trip to California, Madam Dong was appointed to serve as an officer and director of Gree USA.

24.    In 2011, Gree China manufactured 274,691 dehumidifiers that it sold via Gree Hong Kong to MJC and Gree USA.

25.    In 2012, Gree China manufactured 845,513 dehumidifiers that it sold via Gree Hong Kong to MJC and Gree USA.

26.    In 2013, Gree China manufactured 285,596 dehumidifiers that it sold via Gree Hong Kong to MJC and Gree USA.

27.    In total, from 2010 through 2013, Gree China manufactured and sold 1,840,000 dehumidifiers via Gree Hong Kong to MJC and Gree USA, two California corporations.

28.    From 2010 until 2013, Gree China and Gree Hong Kong sent employees, including sales executives, accounting executives and engineers, to California to meet with the officers and directors of MJC and Gree USA for the purpose of furthering the sales and marketing of Gree products in the United States.

29.    In September of 2012, Gree China dispatched an employee of Gree China to California for the purpose of meeting with Gree USA and MJC in order to review known defects in the dehumidifiers and to convince Gree USA and MJC not to report defects in the dehumidifiers to the U.S. Consumer Product Safety Commission.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

30.     After 2013, on at least two separate occasions, Gree China retained counsel in California for the purpose of instituting litigation in California on its behalf related to its business activities and sale of products to MJC in California.

## SUBJECT MATTER JURISDICTION AND VENUE

31.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) as the amount in controversy exceeds $5 million, exclusive of interest and costs, and at least one member of the class is a citizen of a state different from each of the named defendants.

32.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1332(a) as Plaintiffs Homesite and ASI, the named class plaintiffs, are citizens of a different state than all named defendants and the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

33.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) as all defendants do substantial business in this judicial district, including the selling of the products at issue.

## GREE CHINA'S FALSIFICATION OF UL CERTIFICATION

34.     Gree China represented to MJC, Gree USA, retailers and the general public that its dehumidifiers were certified by Underwriter's Laboratory ("UL") and that the design and materials used in the manufacturing of its dehumidifiers complied with UL Standard 474 and Standard 94.

35.     As part of the UL certification process, Gree China made representations to UL that the plastics used in the construction of its dehumidifiers complied with the fire ratings in UL 94.

36.     UL 94 requires that consumer electric products, including dehumidifiers, use plastics that have specific burn and flame rates in order to prevent, reduce and limit the risk of fire hazards.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

37.   In its application for UL certification under UL 474, Gree China represented that the materials and plastics used to manufacture and construct its dehumidifiers were compliant with UL 94.

38.   Gree China made these false and misleading representations knowing that the materials and plastics used to manufacture and construct its dehumidifiers were not compliant with UL 94's burn and flame rate requirements.

39.   Gree China made these false and misleading representations knowing that UL was unable to independently conduct the burn/flame resistance testing set forth in UL 94, and that UL relied on Gree China's representations in the certification documents stating that Gree China had these tests performed and the dehumidifiers complied with UL 94.

40.   US retailers will not purchase and sell dehumidifiers that are not certified by UL.

41.   US consumers will not and cannot purchase dehumidifiers that are not certified by UL because US retailers will not purchase or sell non-UL listed electric products.

42.   Gree China's falsification of the UL Certification process was done for the purposes of misleading UL into improperly certifying the dehumidifiers and, in so doing, Gree China defrauded and misled US retailers and consumers into purchasing its dehumidifiers on the false belief that the dehumidifiers were designed and manufactured in compliance with UL standards.

**GREE CHINA'S KNOWING SALE OF DEHUMDIFIERS AFTER IT HAD ACTUAL KNOWLEDGE THAT ITS DEHUMDIFIERS WERE DEFECTIVLY DESIGNED AND MANUFACTURED**

43.   From 2008 until the present time, Gree China was an original equipment manufacturer for General Electric branded dehumidifiers.

44.   In late 2010, GE instructed Gree China to make certain design changes and product improvements to GE branded, Gree China manufactured dehumidifiers.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

45. The design changes were mandated by GE due to product failure issues with the dehumidifiers, including overheating issues and fires.

46. The GE mandated design changes required a) the removal of electrical terminal sleeves that used PVC materials; b) the use of UL 94 V0 rated plastics for structural components of the dehumidifiers, including the fan shroud base, center support and external cabinet; and c) the use of UL 94 5VA flammability rated materials for the terminal cover.

47. Starting in its January 2011 production run, Gree China made the above requested changes for GE dehumidifiers.

48. Gree China did not make the GE mandated design changes for dehumidifiers manufactured under other brand names, including the dehumidifiers that it was manufacturing and selling to Gree USA and MJC.

49. Gree China did not make the GE mandated design changes despite actual knowledge that the design and materials defects identified by GE were causing Gree China's dehumidifiers to fail, overheat, and catch on fire.

50. Since January of 2011, Gree China manufactured and sold approximately 1,400,000 dehumidifiers to Gree USA and MJC in California that Gree China knew were defective because they did not incorporate the GE mandated design and materials changes.

**GREE CHINA'S FALSIFICATION OF UL CERTIFICATION AND SALE OF A KNOWLINGLY DEFECTIVE AND UNREASONABLY DANGEROUS PRODUCT IS IMPUTED TO GREE USA**

51. As is set forth in detail above, the majority owner of Gree USA is Gree Hong Kong, a wholly owned subsidiary of Gree China.

52. Gree China's knowledge of the UL fraud and Gree China's knowing sale of its defective and unreasonably dangerous products is imputed to Gree USA because officers and directors of Gree China were and are officers and directors of Gree USA.

53. The common officers and directors of Gree China and Gree USA knew that the dehumidifiers were not compliant with UL standards as they had approved the

GE design changes and they also approved the continued manufacture and sale of dehumidifiers for other brands without the GE mandated design changes.

**MJC'S KNOWLEDGE OF THE DEFECTS AND GREE CHINA'S ATTEMPT TO SUPPRESS AND DELAY REPORTING THE DANGEROUS PRODUCT DEFECTS TO THE CONSUMER PRODUCT SAFETY COMMISSION**

54.     In July of 2012, after receiving an unusually high number of consumer complaints, after having witnessed a YouTube video showing a SoleusAir by Gree dehumidifier in flames, and after being contacted by the United States Consumer Product Safety Commission ("CPSC") to respond to a consumer complaint of a dehumidifier that overheated and emitted smoke, MJC became concerned that the Gree China manufactured dehumidifiers were fire safety hazards.

55.     In response to these concerns, Charlie and Jimmie Loh, the owners of MJC and officers and directors of Gree USA contacted Gree China to express their concerns and to request technical and engineering assistance.

56.     From July of 2012 until September 2012, Gree China responded to the concerns expressed by the Lohs by stating that the product was not defective and was not causing fires despite Gree China's actual knowledge of the falsified UL certification and the GE mandated design changes.

57.     In September of 2012, employees of Gree China, at the direction of Madam Dong, traveled to California to meet with the Lohs and others employees of MJC and Gree USA for the purposes of discussing the dehumidifier safety issues.

58.     During the September 2012 meeting, Larry Lam, an employee of Gree Hong Kong, and an engineer known as Ju from Gree China, informed the Lohs that Gree China was aware that the plastics used in constructing the dehumidifiers were not compliant with UL 94 and UL 474.

59.     In this meeting, Larry Lam and engineer Ju admitted that Gree China knowingly submitted test sample dehumidifiers to UL which did not comply with UL 94 and UL 474 because Gree China knew that UL relied on manufacturers to test their

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

products for UL 94 burn rate compliance and that UL would not conduct independent burn rate testing on Gree China's dehumidifiers.

60.     At the conclusion of the meeting, Gree China, Gree USA, MJC and Gree Hong Kong agreed not to recall their defective products, or to report the defective design and defective materials issues to the CPSC, its retail customers or the general public to avoid adverse publicity and loss of sales.

61.     The decision not to recall their defective products was based on the instructions given from Gree China to Gree USA and MJC.

62.     As part of this decision, Gree China wanted to delay any recall until 2013 so that Gree China could continue to capture market share and sales and so that Gree China had time to change its manufacturing lines and supply chains to incorporate the design changes and then to use fire resistant materials.

63.     From September of 2012 until November/December of 2012, Gree USA and MJC continued to receive consumer complaints of overheating and fires caused by their dehumidifiers.

64.     In response to the growing concerns over product safety, Gree USA and MJC placed a temporary hold on sales of dehumidifiers to retailers and warehoused thousands of dehumidifiers.

65.     In December of 2012 or January of 2013, after Gree China insisted and pressured MJC and its officers and directors, Gree USA, MJC and Gree USA released the temporary hold on sales of dehumidifiers to the retailers.

66.     As part of MJC and Gree USA's agreement with Gree China to release the temporary hold, Gree China agreed to defend and indemnify MJC for any losses.

67.     Gree China, Gree Hong Kong, Gree USA and MJC continued to sell their defective and unreasonably dangerous dehumidifiers until September of 2013, when the dehumidifiers were recalled pursuant to a voluntary recall program with the CPSC.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**THE RECALL AND CIVIL PENALTY IMPOSED BY THE CPSC**

68.    On September 12, 2013, the CPSC announced that Gree China manufactured dehumidifiers were being recalled because of serious fire and burn hazards.

69.    A true and correct copy of the September 12, 2013 recall notice is attached hereto as Exhibit "A."

70.    The September 12, 2013 CPSC notice announced that Gree China, Gree Hong Kong, Gree USA and MJC were recalling 2,200,000 dehumidifiers sold from January 2005 through August of 2013 involving the following brand names:  Danby, DeLouhgi, Fedders, Fellini, Frigidaire, Gree, Kenmore, Norpole, Premiere, Seabreeze, SoleusAir, and SuperClima.

71.    In January of 2014, the recall was expanded to include 300,000 GE brand dehumidifiers that had been manufactured by Gree China and sold by Gree China to GE between January of 2008 and December of 2010.

72.    The recall was re-announced on May 15, 2014 due to a significant increase in the number of overheating events and fires caused by the dehumidifiers.

73.    In the months between September of 2013 and May of 2014, the number of overheating dehumidifiers increased from 171 to 471.

74.    In the months between September of 2013 and May of 2014, the number of fires almost tripled from 46 to 121.

75.    As of May of 2015, only 240,000 dehumidifiers have been returned by customers and approximately 2,260,000 remained in US residences.

76.    In response to information provided to the CPSC, the CPSC instituted a civil penalty investigation against Gree China, Gree Hong Kong and Gree USA.

77.    The civil penalty investigation alleged that the defendants a) knowingly failed to report a defect and unreasonable risk of serious injury to the CPSC; b) knowingly made misrepresentations to CPSC staff during its investigation; and c)

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

knowingly sold dehumidifiers bearing the UL safety certification mark knowing that the dehumidifiers did not meet UL flammability standards.

78.    On March 25, 2016, the CPSC announced that the defendants had agreed to pay a civil penalty of $15,450,000.00 to settle the charges alleged by the CPSC.

79.    This civil penalty is a record settlement, with the defendants being the first alleged violators of CPSC rules to reach the per violation maximum imposed by the Consumer Product Safety Improvement Ace of 2008.

80.    Based on the number of products still in residences and the increasing frequency of overheating incidents and fires, it is believed that the number of fires caused by the dehumidifiers is now in excess of 300, a number that will increase exponentially as the dehumidifiers age.

## THE NAMED CLASS REPRESENTATIVES' CURRENT SUBROGATION CLAIMS

81.    Homesite issues policies of property insurance in many states throughout the United States, pursuant to which it insured the real and personal property of Chanh Peng, located at 3002 Planters Mill Drive, Dacula, Georgia 30019,  (hereinafter "Chanh Peng Residence").

82.    Before 2015, the Chanh Peng purchased a dehumidifier bearing the SoleusAir by Gree brand name that had been manufactured by Gree China. (hereinafter "Chanh Peng dehumidifier").

83.    The Chanh Peng dehumidifier was manufactured by Gree China, exported by Gree Hong Kong to the United States, sold to MJC and/or Gree USA in California and subsequently distributed by MJC and/or Gree USA from California to Home Depot.

84.    On June 26, 2015, the Chanh Peng dehumidifier caught fire in the basement of Chang Peng residence.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

85.    The June 26, 2015 fire in the Chanh Peng (the "Chanh Peng") caused smoke, water and fire damage to the real and personal property of the Chanh Peng as well as emergency expenses and additional living expenses.

86.    As a result of the Chanh Peng fire, Chanh Peng made a claim to Homesite pursuant to their policy of insurance, and Homesite reimbursed the Chanh Peng for those claims.

87.    As a result of the Chanh Peng fire, Homesite incurred adjustment and claim expenses which it otherwise would not have incurred, in an amount in excess of $2,000.00

88.    By virtue of its payments, Homesite is now legally, equitably and contractually subrogated to the claims of the Chanh Peng against any responsible third parties, including the defendants herein.

89.    Homesite is also entitled to recover damages incurred in investigating and adjusting the Chanh Peng claim.

90.    ASI issues policies of property insurance in many states throughout the United States, pursuant to which it insured the real and personal property of Kurt Destree, located at 2341 Brice Court, Green Bay Wisconsin 54311 (hereinafter "Destree Residence").

91.    Before 2015, Kurt Destree purchased a dehumidifier bearing the SoleusAir by Gree brand name that had been manufactured by Gree China. (hereinafter "Destree dehumidifier").

92.    The Destree dehumidifier was manufactured by Gree China, exported by Gree Hong Kong to the United States, sold to MJC and/or Gree USA in California and subsequently distributed by MJC and/or Gree USA from California to Home Depot.

93.    On May 3, 2015, the Destree dehumidifier caught fire in the Destree residence.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

94.    The May 3, 2015, fire in the Destree residence caused smoke, water and fire damage to the real and personal property of the Kurt Destree as well as emergency expenses and additional living expenses.

95.    As a result of the Destree fire, Kurt Destree made a claim to ASI pursuant to the policy of insurance, and American reimbursed Kurt Destree for his losses.

96.    As a result of the Destree fire, ASI incurred adjustment and claim expenses which it otherwise would not have incurred, in an amount in excess of $2,000.00

97.    By virtue of its payments, ASI is now legally, equitably and contractually subrogated to the claims of Kurt Destree against any responsible third parties, including the defendants herein.

98.    ASI is also entitled to recover damages incurred in investigating and adjusting the Destree claim.

99.    Meridian issues policies of property insurance in many states throughout the United States, pursuant to which it insured the real and personal property of Bruce Van Natta, located at 1812 West 156th Street, Westfield, Indiana 46074 (hereinafter "Van Natta Residence").

100.   Before 2015, Bruce Van Natta purchased a dehumidifier bearing the SoleusAir by Gree brand name that had been manufactured by Gree China. (hereinafter "Van Natta dehumidifier").

101.   The Van Natta dehumidifier was manufactured by Gree China, exported by Gree Hong Kong to the United States, sold to MJC and/or Gree USA in California and subsequently distributed by MJC and/or Gree USA from California to Home Depot.

102.   On April 2, 2015, the Van Natta dehumidifier caught fire in the Van Natta residence.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

103. The April 2, 2015 fire in the Van Natta residence caused smoke, water and fire damage to the real and personal property of Bruce Van Natta as well as emergency expenses and additional living expenses.

104. As a result of the Van Natta fire, Bruce Van Natta made a claim to Meridian pursuant to the policy of insurance, and Meridian reimbursed Bruce Van Natta for his losses.

105. As a result of the Van Natta fire, Meridian incurred adjustment and claim expenses which it otherwise would not have incurred, in an amount in excess of $2,000.00

106. By virtue of its payments, Meridian is now legally, equitably and contractually subrogated to the claims of Bruce Van Natta against any responsible third parties, including the defendants herein.

107. Meridian is also entitled to recover damages incurred in investigating and adjusting the Van Natta claim.

108. Milbank issues policies of property insurance in many states throughout the United States, pursuant to which it insured the real and personal property of Kenneth Kobs, located at 73440 318th Avenue, Lake City, Minnesota 55041 (hereinafter "Kobs Residence").

109. Before 2014, Ken Kobs purchased a dehumidifier bearing the SoleusAir by Gree brand name that had been manufactured by Gree China. (hereinafter "Kobs dehumidifier").

110. The Kobs dehumidifier was manufactured by Gree China, exported by Gree Hong Kong to the United States, sold to MJC and/or Gree USA in California and subsequently distributed by MJC and/or Gree USA from California to Home Depot.

111. On October 14, 2014, the Kobs dehumidifier caught fire in the Kobs' residence.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

112. The October 14, 2014 fire in the Kobs' residence caused smoke, water and fire damage to the real and personal property of Ken Kobs as well as emergency expenses and additional living expenses.

113. As a result of the Kobs' fire, Ken Kobs made a claim to Milbank pursuant to the policy of insurance, and Milbank reimbursed Ken Kobs for his losses.

114. As a result of the Kobs' fire, Milbank incurred adjustment and claim expenses which it otherwise would not have incurred, in an amount in excess of $2,000.00

115. By virtue of its payments, Milbank is now legally, equitably and contractually subrogated to the claims of Ken Kobs against any responsible third parties, including the defendants herein.

116. Milbank is also entitled to recover damages incurred in investigating and adjusting the Kobs claim.

## THE COMMON DEFECTS IN GREE CHINA MANUFACTURED DEHUMDIFIERS PRESENT AN IMMEDIATE AND CONTINUING SAFETY RISK

117. All of the 2,500,000 dehumidifiers manufactured by Gree China have the same common defects consisting of, among other things, a) the use of electrical terminal sleeves that use PVC materials; b) the use of plastics and materials for the structural components of the dehumidifiers, including the fan shroud base, center support and external cabinet that do not meet and comply with UL 94 V0; and c) the use of plastics and materials for the terminal cover that do not meet and comply with UL 94 5VA.

118. Out of the 2,500,000 dehumidifiers with these common defects, approximately 2,260,000 of these defective dehumidifiers manufactured by Gree China remain in US homes and residences, posing a serious risk to the life and property of US homeowners.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

119.   Based on increasing reports of overheating and fires, the risk of fires will likely increase as the dehumidifiers age, increasing the likelihood of fire and resulting property damage, as well as potential personal injuries and fatalities.

**CLASS ACTION ALLEGATIONS**

120.   Plaintiffs bring this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(a), 23(b)(2) and 23(b)(3) against Gree China, Gree Hong Kong and Gree USA

121.   The Class consists of: during the fullest period allowed by law, all insurance carriers that issued property insurance policies for homeowners, including apartments and rental properties, whose insureds purchased or otherwise acquired a dehumidifier manufactured by Gree China from 2005 until the present and whose insureds have suffered a fire, smoke and/or water loss caused by the failure of a dehumidifier manufactured by Gree China, or whose insured will suffer a fire, smoke and/or water loss caused by the failure of a dehumidifier manufactured by Gree China in the future.

122.   The Class is limited to the time period beginning on the date established by the Court's determination of any applicable statute of limitation, after consideration of any tolling and accrual issues, and ending on the date of the entry of judgment.

123.   Excluded from the class are (1) Gree China, Gree Hong Kong, and Gree USA, their officers, directors and employees, and (2) all property insurers who execute and timely file a request for exclusion from the class. Numerosity: While the exact number of members cannot be determined yet, the class consists of a number of property insurers having insureds in the hundreds, if not thousands, who have suffered or will suffer a fire, smoke or related loss as a result of the failure of a dehumidifier manufactured by Gree China.

124.   The number of class members with insureds who have or will suffer such losses is so numerous that joinder of all members is impracticable.  As of May of 2014, at least 470 dehumidifiers have overheated and more than 120 fires have been

17

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

reported according to the public information available from the CPSC's website. Because all of the 2,500,000.00 dehumidifiers designed, manufactured and distributed by Gree China from 2005 until August of 2013 share common defects, and all of them were designed and manufactured with plastics and materials that are not fire retardants, it is expected that hundreds, if not thousands of additional dehumidifiers, will fail, overheat, and cause fires.  Thus, the class consists of all property and casualty insurers which have issued policies in the United States covering properties within which a dehumidifier manufactured by Gree China is being used.  Considering that over 2 million such dehumidifiers were not effectively recalled by the defendants, and thus remain in operation in countless properties throughout the country, each of these hundreds of insurance company class members potentially may have dozens, if not hundreds, of insureds who will be exposed to fire and smoke losses, with resulting property damage, caused by Gree China's defective dehumidifiers.

125.   Commonality:  Common questions of law and fact exist as to all class members. Among the common questions of law and fact are:

A.   Whether the dehumidifiers pose a fire safety risk;

B.   Whether the defendants intentionally placed the dehumidifiers into the stream of commerce with actual knowledge that dehumidifiers pose an unreasonable safety risk;

C.   Whether Gree China and Gree Hong Kong concealed the defects and safety risks;

D.   Whether Gree China and Gree Hong Kong committed fraud when they intentionally designed and manufactured the dehumidifiers without using materials and plastics that complied with UL 94;

E.   Whether Gree China and Gree Hong Kong intentionally, and with the intent to deceive and defraud, misrepresented that its dehumidifiers were UL compliant when, in fact, they were not UL compliant;

18

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

F.    Whether Gree China and Gree Hong Kong knew or should have known after GE required design changes that its dehumidifiers were defective, unreasonably dangerous and posed serious fire hazards;

G.    Whether the dehumidifiers are defective;

H.    Whether the dehumidifiers share a common defect;

I.    Gree China's culpable acts and omissions relating to the UL certification process;

J.    Whether Gree China and Gree Hong Kong's knowledge and culpable acts and omissions can be imputed to Gree USA;

K.    Whether the dehumidifiers are likely to start fires before the end of their reasonable expected lifetime;

L.    Whether California law applies to all of the class members' claims;

M.    Whether plaintiffs and class members are entitled to equitable relief, including an injunction requiring the defendants to engage in a corrective action campaign, which will result in more than 10% of the products being returned;

N.    Whether the corrective action/recall undertaken by the defendants was sufficient;

O.    Whether the corrective action/recall undertaken by the defendants was negligent because it was not designed to meet the maximum number of consumers;

P.    Whether the design of the dehumidifiers is defective and unreasonably dangerous;

Q.    Whether the plaintiffs and the class members are entitled to injunctive relief requiring the defendants to conduct a proper notification and recall program;

19

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

126.   Typicality: Plaintiffs have substantially the same interest in this matter as all other members of the class and plaintiffs' claims arise out of the same set of facts and conduct as all other members of the class.  Plaintiffs and all class members are insurance companies who issued homeowner's insurance policies to US policyholders who own or used dehumidifiers manufactured by Gree China, exported to the United States by Gree Hong Kong, and distributed from California to the rest of the United States by Gree USA and/or MJC.  The insurance claims received and to be made under policies issued by members of the class all satisfy the typicality requirement in that each of these claims will have had an identical cause, namely, the malfunctioning of these defective dehumidifiers due to inadequate controls to prevent overheating and utilization of plastics that violate the certification requirements under the UL listing issued to Gree China based upon the false and fraudulent representations made by Gree China.  Thus, the insurance claims of the named class members are typical of the claims covered and paid by all members of the class.

127.   Adequacy of Representation:  Plaintiffs are committed to pursuing this action and have retained competent counsel.  Counsel for plaintiffs has the largest subrogation practice in the United States, specializing in fire and property damage litigation, having represented thousands of insurance companies in more than 100,000 fire damage cases since the founding of the firm in 1970.  Counsel for plaintiffs is also experienced in complex litigation, including MDL litigation and class action litigation. Accordingly, plaintiffs and their counsel will fairly and adequately protect the interests of the members of the class.  Plaintiffs' claims are coincident with, and not antagonistic to, those of other class members they seek to represent.  Plaintiffs have no disabling conflicts with members of the classes and they will fairly and adequately represent the interests of the other class members.

128.   The elements for class certification under Rule 23(b)(2) are met.  The defendants will continue to commit the violations alleged and the members of the classes will continue to suffer serious and dangerous safety risks from fires caused by

20

these defective dehumidifiers.  The defendants have both acted and refused to act on the grounds that apply generally to the class members so that final injunctive relief and corresponding declaratory judgment relief is appropriate respecting the class as a whole.

129.   The elements of Rule 23(b)(3) are met.  The common questions of law and fact enumerated above predominate over the questions affecting only individual members of the class and a class action is the superior method for the fair and efficient adjudication of the controversy.  The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.  Based on the numbers of fires and the amount of overall property damage reported by the CPSC, the average cost of repairs for these dehumidifier failures and resulting fires is $37,000.00.  The cost to litigate separate and individual protect defect case against the defendants, and especially against Gree China and Gree Hong Kong given their status as foreign corporations, makes it cost prohibitive for insurers to separately litigate their claims against defendants.  Serial adjudication in numerous venues is not efficient, timely or proper.  Indeed, serial adjudication in jurisdictions other than in California may be impossible as California might be the only jurisdiction that has personal jurisdiction over Gree China and Gree Hong Kong.  Judicial resources throughout California and the United States will be unnecessarily depleted by litigation of individual claims.  Joinder on an individual basis of hundreds of claims in hundreds, if not thousands of cases would be impractical or impossible.  Individualized rulings and judgments have and will result in inconsistent relief for similarly situated plaintiffs.  Plaintiffs' counsel, highly experienced in class action and product liability litigation, foresees little difficulty in the management of this case as a class action.  Indeed, the only way to ensure that the serious misconduct and safety risks alleged herein are remedied is through a collective action on behalf of United States property insurers.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

130.  To the extent that a national class is sought for plaintiffs' claims, plaintiffs' claims are materially the same under the law of California as in all states in the United States.  In the event that California law does not apply on a nationwide basis, plaintiffs will seek to apply the laws of the various states and the District of Columbia as will be addressed in plaintiffs' brief in support of class certification.

131.  The nature of notice to the proposed class is as follows:

Notice to the proposed class easily will be accomplished in that each member of the class is a property and casualty insurance company, doing business within the United States, many of whom already are represented by plaintiffs' counsel in other insurance litigation matters, and all of whom are readily able to be notified of all matters pertaining to the proposed class.

## TOLLING AND ESTOPPEL STATUTE OF LIMITATIONS

132.  The claims alleged herein accrued upon discovery of the defect in the dehumidifiers. Because the defect alleged herein is hidden and because the defendants took steps to actively misrepresent and conceal the true character, nature and quality of the dehumidifiers, plaintiffs and class members did not discover and could not have discovered the alleged defect through reasonable and diligent investigation.

133.  Any applicable statute of limitations is tolled by defendants' actual misrepresentations, concealment and denial of the facts as alleged herein, concealment which is ongoing and continues to this day.  Plaintiffs and class members could not have reasonably discovered the true defective nature of the dehumidifiers until the recall in 2012.  As a result of the defendants' active concealment of the defect and/or failure to inform plaintiffs and class members of the defect, any and all statutes of limitation otherwise applicable to the allegations herein have been tolled.

134.  Alternatively, the facts above give rise to an estoppel.  The defendants knew of the defects and the serious safety risks those defects posed to consumers and actively concealed them.  The defendants were and are under a continuous duty to disclose to plaintiffs and the class members the true character, quality and nature of

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

the dehumidifiers.  Particularly, defendants are and were under a duty to disclose that the defective dehumidifiers pose a serious risk to public safety, represent an imminent fire hazard and create an ongoing risk of property damage and personal injury.  At all times relevant hereto, and continuing to this day, the defendants knowingly, affirmatively and actively misrepresented the true character, quality and nature of their dehumidifiers, including having failed, to this day, to inform the Consumer Product Safety Commission and the consuming public that Gree China falsified records in order to secure UL certification concerning the flammability characteristics of the materials used in the manufacture and construction of the dehumidifiers.

135.   Given defendants' failure to disclosure this non-public information concerning the defective nature of the dehumidifiers and the resulting safety risks to the public, information over which the defendants had exclusive control, and because plaintiffs and class members could not have reasonably known that the dehumidifiers were defective and manufactured with non-UL 94 compliant materials, defendants are estopped from prevailing on any statute of limitations defense in this action.

**CLAIMS FOR RELIEF**
**COUNT I – DECLARATORY RELIEF**
**(PLAINTIFFS INDIVIDUALLY AND ON BEHALF OF THE CLASS)**

136.   Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

137.   There is an actual controversy between the defendants and class members concerning the existence of defects in the dehumidifiers.

138.   Pursuant to 28 U.S.C. § 2201, this Court may declare the rights and legal relations of any interested parties seeking such declaration, whether or not further relief is sought or could be sought.

139.   Accordingly, plaintiffs and class members seek a declaration that the dehumidifiers have common defects in their design or manufacture, that the defendants knowingly and intentionally defrauded the UL certification process and

23
CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1  that the common defects found in the dehumidifier present a serious safety risk to

2  consumers and the broader public.

3
## COUNT II – NEGLIGENCE
### (PLAINTIFFS, INDIVIDUALLY AND ON BEHALF OF THE CLASS)
4

5  140.   Plaintiffs re-allege and incorporate the preceding paragraphs as if fully

6  set forth herein.

7  141.   The defendants owed a duty to plaintiffs and class members' insureds

8  (homeowners in the United States) to design, manufacture, produce, test, inspect,

9  market, distribute and sell dehumidifiers with reasonable care, and had a duty to

10  protect plaintiffs and class members from foreseeable and unreasonable risk of harm.

11  142.   The defendants breached this duty by, among other things, negligently

12  designing, manufacturing, testing, inspecting and distributing the defective

13  dehumidifiers.

14  143.   As is set forth more fully above, the defendants knew or should have

15  known that the dehumidifiers they designed, manufactured, produced, tested,

16  inspected, marketed, distributed and sold, in ordinary and foreseeable use, created

17  unreasonable safety risks and would fail to perform as intended, resulting in fires and

18  related property damage.

19  144.   The defendants knew or should have known that the dehumidifiers

20  created dangerous and unreasonable safety risks as the dehumidifiers had defects

21  which caused them to overheat, smoke, catch fire and ignite other combustible

22  materials in homes and businesses. The defendants knew or should have known that

23  the dehumidifiers had defects that could cause catastrophic property damage, personal

24  injury and/or death.

25  145.   Based on this knowledge, the defendants had a duty to disclose to the

26  plaintiffs and class members the serious safety risks created by their dehumidifiers,

27  and a duty to disclose the defective nature of their dehumidifiers.

28

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

146.   The defendants had a further duty not to put the defective dehumidifiers on the market and a continued duty to replace their unsafe dehumidifiers, remove their unsafe dehumidifiers from the market and recall their unsafe dehumidifiers from customers.

147.   The defendants failed to exercise reasonable care with respect to the design, manufacture, production, testing, inspection, marketing, distribution and sale of their dehumidifiers, by, among other things, failing to design and manufacture the dehumidifiers in compliance with UL requirements, failing to design and manufacture the dehumidifiers in a manner to ensure that under normal intended usage the dehumidifiers would not fail and catch fire, and by failing to undertake a reasonable recall of the dehumidifiers.

148.   The defendants failed to exercise reasonable care in that they failed to adequately and sufficiently warn consumers and users, either directly or indirectly, of the uniform defects in the dehumidifiers.

149.   The defendants failed to exercise reasonable care when they knew of the safety risks posed by the dehumidifiers and actively concealed those risks from plaintiffs and the class members, as well as UL, major US retailers where the dehumidifiers were ultimately sold, and the general public.

150.   As a direct and proximate result of the negligent acts and omissions set forth above, plaintiffs and the class members' insureds purchased the dehumidifiers without the knowledge of these defects or their serious safety risks.

151.   As a direct and proximate result of defendants' negligence, plaintiffs and the class members suffered damages.

### COUNT III – VIOLATIONS OF CA. CIV. CODE § 1750, *ET SEQ.* (PLAINTIFFS, INDIVIDUALLY AND ON BEHALF OF THE CLASS)

152.   Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

153.   The California Consumers Legal Remedies Act, Cal. Civil Code § 1750 *et seq*. ("CLRA") prohibits "unfair or deceptive acts or practices."

154.   The CLRA applies to defendants' actions and conduct described herein because it extends to the sale of goods or services for personal, family or household use.

155.   At all relevant times, plaintiffs and the class members' insureds were "consumers" as defined in Civil Code § 1761(d).  Plaintiffs and the class members, upon making payments to their insureds for property damage losses which they sustained and which are covered under the insurance policies issued to them by the plaintiffs and class members, acquire the rights of their insureds under policy provisions and by operation of law.  Accordingly, plaintiffs and the class members "stand in the shoes" of their insureds, and are authorized to pursue all claims and causes of action belonging to their insureds against third parties such as the defendants herein who are legally liable for having caused the property damage losses paid by the plaintiffs and class members.  Thus, the consumer transactions which were entered into by the insureds of the plaintiffs and the class members have created rights, claims and causes of action which are vested in the plaintiffs and class members who, under contractual and common law principals of subrogation, may enforce these rights of action in the same way as their consumer insureds.

156.   The transactions from which this action arise include transactions involving the sale or lease of goods or services for personal, family or household purposes within the meaning of Civil Code § 1761(d).

157.   Plaintiffs have given notice of the defect to defendants as provided by Cal. Civ. Code § 1782(d) and defendants have failed to provide a remedy to plaintiffs within the period required by law.

158.   Defendants developed, manufactured, marketed and sold the dehumidifiers containing the defects as alleged herein.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1    159.   Defendants developed, manufactured, marketed and sold the

2    dehumidifiers despite knowledge of the defects and the serious safety risks created by

3    the defective dehumidifiers, to the plaintiffs and class members' insureds.

4    160.   Defendants' marketing and sale of the dehumidifiers as safe for home use

5    despite knowledge that their dehumidifiers posed serious safety risks to consumers;

6    defendants' failure to disclose the defects and safety risks known to defendants, but

7    hidden from consumers; and defendants' knowing concealment of the unreasonable

8    safety risks associated with their defective dehumidifiers; are misrepresentations,

9    omissions and concealments of material fact that constitute unfair and/or deceptive

10   practices in violation of the CLRA.

11   161.   Defendants violated the CLRA not only when they sold the dehumidifiers

12   and misrepresented the dehumidifiers to be safe for use in consumers' homes, but also

13   when they failed to disclose to plaintiffs and the class members that the dehumidifiers

14   had known defects that posed a serious safety risk to consumers and the public.

15   162.   Defendants engaged in deceptive trade practices, in violation of the

16   CLRA, including selling a product for home use that was unsafe to use in the home,

17   holding out to the public that their dehumidifiers could be used safely in the home,

18   and failing to warn consumers that their dehumidifiers contained defects that

19   presented serious safety risks to consumers and the public.

20   163.   Defendants' deceptive trade practices were designed to induce plaintiffs

21   and the class members/insureds to purchase the dehumidifiers containing the defect

22   and for defendants to attempt to avoid the cost of replacing the defective

23   dehumidifiers already in use in millions of homes throughout California and the

24   United States.

25   164.   Defendants' violations of the CLRA were designed to conceal material

26   facts about the defects and unreasonable safety risks in the dehumidifiers, in order

27   both to induce plaintiffs and the class members' insureds to purchase the

28

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

dehumidifiers, and for the defendants to attempt to avoid the enormous business cost of replacing the dehumidifiers.

165.   By engaging in the unfair and deceptive conduct described herein and more fully above, defendants actively concealed and failed to disclose material facts about their defective dehumidifiers.

166.   The omissions set forth above regarding the dehumidifiers are material facts that a reasonable person would have considered important in deciding whether or not to purchase a dehumidifier made and sold by the defendants.  Indeed, no reasonable consumer would, or could have bought a dehumidifier for use in the home (or anywhere for that matter) if the dehumidifiers were not UL compliant.

167.   Defendants' acts were intended to be deceptive and/or fraudulent, namely to market, distribute and sell their defective dehumidifiers that were not UL compliant.

168.   Plaintiffs and the class members' insureds suffered an injury in-fact as a direct result of defendants' violations of the CLRA in that they have purchased dehumidifiers that are fire hazards and are not compliant with UL.

169.   Had defendants disclosed the true quality and nature of the dehumidifiers as well as the defects contained therein, plaintiffs and class members' insureds would not have purchased the dehumidifiers.

170.   Pursuant to California Civil Code section 1782, plaintiffs notified defendants in writing, by certified mail, of the particular violations of section 1770 of the CLRA relating to the dehumidifiers and demanded that defendants (i) rectify the defect; (ii) notify all consumers of the dehumidifiers that defendants will provide them with an appropriate remedy, including, but not limited to, full reimbursement for the dehumidifiers, along with compensation for out-of-pocket losses; (iii) conduct a corrective advertising campaign and destroy all misleading and deceptive advertising materials and products; and (iv) recall the defective dehumidifiers and inform all purchasers of the defective dehumidifiers of the defect and that the defect may cause

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

the dehumidifiers to catch fire and cause property damage or personal injury or death. Defendants' wrongful business practices regarding the dehumidifiers constituted and constitute a continuing course of conduct in violation of the CLRA.  A copy of the letter is attached hereto as Exhibit "B."

171.   Pursuant to California Civil Code section 1780(a), plaintiffs and the class members seek an order enjoining defendants from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law and awarding plaintiffs and the class restitution and/or disgorgement and/or awarding plaintiffs and the class members' damages and punitive damages.

**COUNT IV – VI**
**VIOLATIONS OF CAL. BUS. & PROF. CODE § 17200, ET SEQ.**
**(PLAINTIFFS INDIVIDUALLY AND ON BEHALF OF THE CLASS)**

172.   Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

173.   Defendants have engaged in unfair competition within the meaning of the California Business & Professional Code § 17200, et seq. ("the California UCL") because defendants' conduct was unlawful, misleading and unfair, as herein alleged.

174.   Defendants' business practices are unlawful because they violate the California Civ. Code, including at least § 1572, 1710, 1770(a)(5), 1770(a)(7) and/or 1770(a)(9), 1770(a)(19) and other laws including various provisions of the Consumer Product Safety Act (15 U.S.C §§ 2051-2089), including, but not limited to violation of CPSA Section 19(a)(12), 15 U.S.C § 2068(a)(12), and Section 19(a)(13), 15 U.S.C. § 2068(a)(13).

175.   Defendants violated the California UCL, when they concealed and/or failed to disclose the serious safety risks to consumers that their dehumidifiers created, concealed and/or failed to disclose that their dehumidifiers were defective when they had a duty to disclose these safety risks; and misrepresented their compliance with UL and instead sold the dehumidifiers as if they were fit for ordinary purposes and did not present unreasonable safety risks.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

176.   Defendants violated the California UCL when they failed to disclose that their dehumidifiers created serious safety risks and were defective as described herein when they had a duty to disclose the safety risks to consumers and instead falsely misrepresented that their dehumidifiers were safe for consumer use.

177.   Defendants developed, manufactured, marketed and sold their dehumidifiers in a dangerous and defective condition.

178.   As is more fully set forth above, defendants had knowledge of the serious safety risks presented by their dehumidifiers and had knowledge of their defects prior to their sale to plaintiffs and class members' insureds.

179.   Defendants failed to disclose to plaintiffs and class members the material fact that the dehumidifiers posed serious safety risks upon sale, were defective and would prematurely fail and cause fires.  Defendants were in exclusive possession of this knowledge.

180.   Plaintiffs and the class members' insureds did not and could not have had knowledge of the safety risks created by the dehumidifiers at the time that they purchased their dehumidifiers.  Plaintiffs have standing to represent the class members in this action.

181.   Despite their knowledge of the serious safety risks that the dehumidifiers presented to consumers and the public, defendants failed to issue a warning, a recall, or a campaign to replace the dehumidifiers for years, concealing their knowledge both of the defects and the safety issues presented by the dehumidifiers.

182.   Defendants' business acts are both unlawful and fraudulent within the meaning of the California UCL.

183.   As entities with exclusive knowledge regarding the safety risk and defect in the dehumidifiers, defendants had a duty to disclose these defects, particularly in light of the fact that the dehumidifiers posed serious safety risks to plaintiffs and the properties in California class members' insureds.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

184.   Plaintiffs and the class members insuring properties reasonably expected that defendants would have disclosed the existence of both the defects and the serious safety risks that the dehumidifiers presented to consumers and the public, and reasonably expected that defendants would not sell a product for home use that was unsafe to use in the home and would start fires.  This information is and was material to plaintiffs and class members.

185.   Defendants, at all times relevant, knew or should have known that plaintiffs and the class members did not know of, or could not have reasonably discovered, the safety risks or the defects in the defendants' dehumidifiers.

186.   By concealing the serious safety risks created by their dehumidifiers and the existence of these defects, defendants engaged in actionable, unfair, and fraudulent conduct within the meaning of the California UCL.

187.   Had plaintiffs and class members' insureds known of the serious safety risks and/or the defects in the dehumidifiers, they would not have purchased the dehumidifiers.

188.   Defendants' business acts and practices alleged herein are unfair within the meaning of the California UCL.  Specifically, by failing to disclose and concealing the existence of a defect in the dehumidifiers, defendants engaged in unfair conduct within the meaning of the California UCL.

189.   Defendants' misconduct is unfair within the meaning of the California UCL as it offends established policy and/or is immoral, unethical, unscrupulous, and substantially injurious to consumers.

190.   Plaintiffs and class members insuring properties in California have suffered damages as a result of defendants' misconduct.

191.   Defendants' unlawful, unfair and fraudulent business acts and practices continue through the date of the filing of this Complaint.

192.   Under the California UCL, plaintiffs and class members request that this Court enjoin defendants from engaging in business practices that constitute a violation

of the California UCL.  Plaintiffs and the class further request that this Court enter such orders or judgments as may be necessary to restore to any person in interest any damages which may have been incurred by means of such unfair practices, as provided for in Bus. & Prof. Code § 17203 and for such other relief as set forth herein.

## COUNT V – STRICT PRODUCT LIABILITY
## (PLAINTIFFS, INDIVIDUALLY AND ON BEHALF OF THE CLASS)

193.   Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

194.   Defendants are engaged in the business of designing, manufacturing, distributing, advertising, marketing, promoting and/or selling appliances, including dehumidifiers, throughout the United States.

195.   Defendants designed, manufactured, distributed, advertised, marketed, promoted and sold the dehumidifiers at issue herein.

196.   The dehumidifiers were expected to, and did, reach plaintiffs and class members' insureds without substantial change in the condition in which the dehumidifiers were manufactured, sold and distributed.

197.   The dehumidifiers were in a defective and unreasonably dangerous condition when they left defendants' possession or control in that, under normal conditions, usage and applications, the dehumidifiers could not withstand the use for which they were intended and instead failed, causing fire, smoke and related damages as well as threatening the consumers' personal safety.

198.   Plaintiffs and class members' insureds used the dehumidifiers in a manner reasonably intended by defendants.

199.   The dehumidifiers were defective for the following reasons: (1) they were not reasonably safe for the ordinary and intended use of dehumidifying the environment; (2) defendants failed to provide plaintiffs and class members' insureds with adequate and sufficient warnings regarding the known and foreseeable safety risks and dangers inherent in the dehumidifiers; (3) the design, methods of

1  manufacture, and testing of the dehumidifiers were inadequate and produced a

2  defective product.

3      200.   As a direct and proximate result of the defective condition of the

4  defendants' dehumidifiers, plaintiffs and class members' insureds purchased

5  dehumidifiers that do not serve the purpose for which they are intended, causing

6  property damages and other incidental and consequential damages to plaintiffs and

7  class members and creating risks of future harm to purchasers of these defective

8  dehumidifiers.

9                      **PRAYER FOR RELIEF**

10     WHEREFORE, plaintiffs pray for the following judgment:

11         A.   An Order certifying this action as a class action;

12         B.   An Order appointing plaintiffs as class representatives and

13              appointing counsel undersigned to represent the class members;

14         C.   A Declaration that the dehumidifiers are defective;

15         D.   A Declaration that Gree China and/or Gree Hong Kong falsified

16              the UL Certification;

17         E.   A Declaration that the defects in the defendants' dehumidifiers

18              create serious safety risks to consumers and to the broader public;

19         F.   An Order awarding injunctive relief by requiring defendants to

20              issue corrective actions including notification, recall, and

21              replacement of the dehumidifiers;

22         G.   Payment to the Class of reimbursement for all damages resulting

23              from the replacement of the defective products, in an amount to be

24              proven at trial;

25         H.   Payment to the Class of all damages resulting from property

26              damage caused by the defendants' defective products, in an

27              amount to be proven at trial;

28         I.   Restitution as authorized by law;

1

     J.     An award of attorneys' fees and costs, as provided by law and/or

2

             as would be reasonable from any recovery of damages recovered

3

             for or benefits bestowed on the class;

4

     K.     Interest as provided by law, including but not limited to pre-

5

             judgment and post-judgment interest as provided by rule or statute;

6

     L.     Such other and further relief as this Court may deem just,

7

             equitable, or proper; and

8

     M.     Punitive damages

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1   Dated:  September 8, 2016                COZEN O'CONNOR

2

3                                           By: -/S/
                                                Nathan Dooley
4                                               Elliott R. Feldman
                                                William Clark Jr. Esquire
5                                               Attorneys for Plaintiffs

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims for which a jury trial is authorized.


Dated:  September 8, 2016          COZEN O'CONNOR


By: -/S/-
      Nathan Dooley
      Elliott R. Feldman
      William Clark Jr., Esquire
      Attorneys for Plaintiffs

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF